R. N. MORGAN v. NORFOLK SOUTHERN RAILROAD COMPANY.

*Negligence—Judge's Charge.*

1. Where the plaintiff alleged that he was injured by the faulty construction and negligent management of the defendant's road, but there being no evidence offered in support of the alleged defective construction, and that in reference to the negligent management was conflicting; *Held,*

1. That it was not error in the Court to instruct the jury that it should only consider the question of the alleged negligent management.

2. It is the duty of the Court to confine its instructions and the deliberations of the jury to the material disputed facts involved in the controversy.

3. That injury resulting from the movement and noises produced by operating a railway at the crossing of a street, unless they are wantonly and unnecessarily produced, is *dammum absque injuria.*

This is a CIVIL ACTION, which was tried before *Avery, Judge,* at Spring Term, 1887, of PASQUOTANK Superior Court.

The plaintiff alleged, that by reason of the faulty construction of its road at the crossing of Pennsylvania Avenue, a street in the town of Elizabeth City, and also by reason of the negligent and reckless conduct of its agents in the management of its trains, his horse was frightened and ran away, whereby he and his wife were seriously injured, and the horse and buggy damaged.

The defendant denied that its road was improperly constructed, or that its agents were guilty of negligence; and averred that the accident was due to the plaintiff's own negligence.

The issues submitted were:

1. Was the injury caused by the negligence of the defendant?

2. Did the plaintiff by his negligence contribute to the injury?

3. What is the plaintiff's damage?

The plaintiff testified: "On March 22d, 1886, I was coming from Camden to my home, with my wife and a child in a buggy. When in 300 or 400 yards of the crossing, I saw the engine and train backing in, and after running a portion of the cars across Pennsylvania Avenue, along which I was driving, it pulled forward. I decreased my speed and drove slowly when I first saw it. When it pulled up I drove up within 75 yards of the crossing and stopped. An engine

then crossed and afterwards pulled away from the crossing towards the depot, which was 150 to 200 yards from the crossing, and I thought was going to back to the depot. It went in that direction 30 or 40 yards from the crossing, when I made an attempt to cross the track and got within 15 or 20 yards of the track, when the engine, tender and a coal box attached ran back and ahead of me across the street. My horse became frightened and tried to turn; I jumped out over the spatter-board, caught it, and tried to prevent it, but it turned with me and ran.

When opposite me the engine blowed and the bell was rung and that frightened my horse; it turned and ran, threw out my wife, who was in the buggy with me and broke her collar-bone. There was nothing to obstruct the view of me from the parties on the engine. When I first saw the engine and train I was 300 or 400 yards from it, and when it came out from the depot I was about 75 yards from it. It is not possible to change cars at the switch without crossing the Avenue. There is room off the street inside defendant's inclosure to make a switch.

Cross-examined: When I stopped 75 yards away there was no train in the Avenue, but one was approaching it. When the engine slowed down I started and went about 60 yards; I saw the engine start back and took up my horse, and as soon as I could stopped it after seeing it start back. The engine when in front of my horse made a hissing sound, which was not the sound usually made by an engine in passing. As the accident happened, train stopped opposite or nearly opposite my buggy in the Avenue. My horse was a gentle one. My getting out did not frighten it."

Cannon testified for the defendant: That he was engineer of the defendant's train. "In looking out I saw the horse and buggy 80 to 100 feet off and saw the horse shy; the gentleman dropped his reins and jumped out over the spatter-board, which frightened the horse; it wheeled to the left,

upset the buggy and hurt Mrs. Morgan. The fireman and conductor went to his relief. There was no unusual noise being made by the engine except the ringing of the bell. The horse seemed more frightened by the jumping of the plaintiff than by the engine. He was 80 to 100 feet from the track. I stopped the engine in the avenue by reversing and letting on a little steam; that would make no noise like hissing. In crossing highways it is the custom at slow speed to ring, and at full speed to blow. Everything that could be was done to avoid the injury. I had moved back but once, and had four or five cars attached to the engine. I looked out, as it was my duty to do, and saw no obstructions on or near the track."

Conductor Waddy testified to the same facts stated by Cannon as to the shifting of the trains, and, in addition, that he was standing at the switch and looking at Morgan when the accident occurred; that the horse was frightened by plaintiff's jumping, and that no unusual noise was being made; the engine was going slow; was not letting off steam nor under full headway.

Allen Williams testified: "Witnessed the accident; saw the horse and buggy on the avenue, thirty or forty feet from the crossing. The engine approached the crossing slowly; the horse reared up and turned the buggy over, but before doing so the driver jumped out over the spatter-board. The engineer was ringing the bell, and when he saw the horse was scared he stopped ringing and stopped the engine on the crossing. No whistle was blown, no steam escaping."

The General Manager of the defendant's road testified to the necessity for the location of its tracks and their proper construction.

The plaintiff prayed the following instructions, which were refused, and he excepted:

If the plaintiff, while the defendant's train was crossing and re-crossing the street, stopped his horse sufficiently far

from the track to avoid danger from fright or otherwise, and there waited till the train had crossed over going in the direction of the depot, he had the right then to drive on in the direction he was going, and he was not negligent in doing so; and if when he was in fifteen or twenty yards of the track, and in full view of the defendant's servants, the course of the engine was suddenly changed and run across the street in front of the plaintiff so as to frighten his horse and cause the injury complained of, the defendant is guilty of negligence.

If the defendant, while the plaintiff with his horse was near the track at the crossing and in full view of the servants of the company, needlessly let off steam or caused the whizzing sound described by the plaintiff, or needlessly caused other noise by which the horse was frightened and the accident produced, the defendant is guilty of negligence

Because of the crossing, and of the location of the switch near the same, greater caution and watchfulness were required of the defendant than at points where there was no crossing, and at crossings where there was no switch; and if the defendant failed to exercise such caution and watchfulness it was guilty of negligence.

The plaintiff also excepted to the instructions given, which are set out in the opinion. The jury found the first issue in favor of the defendant. The others were not considered.

There was judgment for the defendant, from which plaintiff appealed.

*Mr. John Gatling*, for the plaintiff.
*Mr. L. D. Stark*, for the defendant.

MERRIMON, J. The Court, among other things, said to the jury on the trial that:

"1. There is only one view presented by the evidence, in which the jury can find that the injury was caused by the

negligence of the defendant. If the engine and tender of the defendant company were crossing and re-crossing the street of the town at a public crossing, and when the plaintiff, approaching the crossing, reached a point from fifteen to thirty yards from the crossing, the engineer saw the plaintiff, and caused the engine, then on or partly on the crossing, to make an unnecessary noise, and thereby so frightened the plaintiff's horse as to cause the horse to turn suddenly and injure the plaintiff's wife by upsetting the buggy, then the jury will respond to the first issue ' Yes.' It is not negligence to ring the bell when the engine is passing over, or about to pass over crossings, unless it is done wantonly, or for the purpose of frightening the horse. If it was done for the purpose of warning persons to avoid danger, it would not be an unnecessary noise.

" 2. The defendant company had a right to make such noises as were necessarily incident to running or reversing the engine, and if only such noise as is used and necessarily incident to moving the engine and cars attached was made, then the defendant was not negligent, and the jury would respond to the first issue ' No.' The burden is on the plaintiff to satisfy by a preponderance of testimony that the injury was caused by defendant's negligence."

The appellant contends that this instruction is erroneous to his prejudice. We think otherwise.

On the trial, there was no evidence to prove that the defendant's railroad, its shifting tracks near its depot and the street over which the plaintiff was passing in his buggy at the time he suffered the injury complained of, was negligently, badly or improperly located or constructed, as alleged in the complaint; nor to prove that the plaintiff was injured by the defendant or its agents or servants, otherwise than by making such unusual, unnecessary, sudden and loud noises by ringing its bell, sounding its steam whistle, the escape of steam making a hissing, fearful sound, and the swift move-

ment of its locomotive with cars attached, as greatly frightened the horse of the plaintiff while hitched to his buggy in the street, and rendered him unmanageable. There was evidence of the plaintiff, tending to prove that the horse, though gentle, was so frightened, and as a consequence upset the buggy, doing serious injury to the wife of the plaintiff and incidentally to himself. There was also evidence of the defendant to the contrary, and tending to prove a total absence of negligence on its part and that of its servants. So that the first and principal issue submitted to the jury was as to the alleged negligence on the part of the defendant done in the way indicated.

The Court, therefore, properly directed the attention of the jury to the single view of the evidence that went to prove negligence.

The instruction as to the character of noise that would constitute negligence was very general—perhaps too indefinite, but this was not to the prejudice of the appellant—it was rather in his favor—it implied broadly any "unnecessary" noise, and left the jury quite at large in this respect.

Nor was the instruction objectionable in other respects. The defendant certainly had the right on its roadway to move its locomotive, with or without cars attached to it, in the orderly course of such work, to and fro in making up its trains, detaching cars from one already formed, and shifting them from one train or place to another. The noises ordinarily—naturally—incident to this work when done where it may lawfully be done, do not constitute negligence or nuisance. Railroads are lawful things, useful and highly important to the well being and prosperity of society, and must be tolerated and encouraged, notwithstanding the annoying and fearful noises sometimes naturally incident to their use in particular places that frighten horses and other animals, and thus occasion accident and injury to individuals. Harm thus sustained is *damnum absque injuria.*

The defendant had the right, indeed it was its duty, at approprtate times to ring its bell and sound its steam whistle, particularly at and near to where its road crossed the street and other roads, to give notice of the approach of moving trains and possible danger. It is not to be understood, however, that a railroad company has the right to make unnecessary, unreasonable, furious and fearful noises that serve no practical and useful purpose, particularly in the immediate neighborhood of where persons are constantly passing and repassing with their horses and vehicles. The noises tolerated are only such as are reasonably incident and necessary to the proper use of the railroad and the machinery appropriate to it.

So much of the special instructions asked for by the appellant as he was entitled to have was plainly embraced by those given. It is not necessary, indeed not proper, to give instructions not pertinent to any reasonable view of the evidence before the jury.

The very purpose of instructions is to direct the attention of the jury to the law applicable as it bears upon the evidence. Any instructions beyond that only tends to mislead and confuse.

The attention of the jury was fairly directed to the principal issue, and the law bearing upon it was stated, certainly not to the prejudice of the appellant. His assignment of error cannot be sustained. Accepting the finding of the jury as correct, the injury sustained by the appellant was the result of accident and misfortune.

No error.                            Affirmed.