W. T. ADAMS v. THE DURHAM AND NORTHERN RAILROAD COMPANY.

*Damages—Easement—Eminent Domain—Railroads, Liability for Injuries by Constructing Road.*

1. It is a general rule that damages to land caused by the erection of a waterway by a railroad company—if skillfully constructed—are included in the compensation for and pass by the grant of the easement of the right-of-way; but this general rule is subject to another rule that the grantee of the easement shall not use its privilege in such manner as to inflict unnecessary injury upon the servient owner.

2. Where the evidence tended to show that a railroad company diverted one stream into another so that the waters from both might be conducted through one waterway; and that such diversion was not necessary to insure the safety of the road, but merely for the purpose of lessening the cost of construction, the owner of the land so damaged was entitled to recover for injuries, notwithstanding he may have granted this right-of-way.

3. When the injuries are the result of causes which may be removed, or a nuisance which may be abated, the measure of damages is not the difference in the value of the land before and after the injury, but its comparative productiveness.

This was a CIVIL ACTION, brought to recover damages for overflow alleged to have been caused by turning a running stream into the channel of another while constructing the road, so as to make both pass through a single waterway, tried at April Term, 1892, of GRANVILLE Superior Court, before *Boykin, J.*

The plaintiff and his wife had joined in a conveyance of the right-of-way for the Durham and Northern Railroad on either side of the center of the railroad track.

The plaintiff introduced evidence that, by reason of the turning of two streams of water, one called Adams' branch and the other Fleming's branch, into one, his land on both sides of the road was flooded and damaged. The plaintiff further showed that, in clearing off the right-of-way, certain logs and bushes were thrown by the defendant in Adams' branch, and the cost of clearing them out amounted to $40. The plaintiff did not introduce any evidence that the said railroad was negligently constructed, or that, in prudent and careful railroad construction, it was not proper to cause the two branches to flow together, or that the trestle was not large enough to carry off the water.

It was admitted that all the land of the plaintiff alleged to have been damaged was, before the railroad was built, in one tract. In estimating the damage, all of the plaintiff's evidence was as to the damage done to the entire tract, and

there was no evidence introduced as to the damage done to each separate tract, except the cost of cleaning the logs, etc., from Adams' branch.

The defendant introduced the deed for the right-of-way over this land.

William Moncure, a witness for the defendant, among other things, testified that he is by profession a civil engineer, and was superintendent of the defendant's road, and had been engaged in constructing and working on railroads for eleven years; that the road of the defendant over the land of the plaintiff is well and skillfully constructed, and the trestle is amply sufficient to carry off the water; that this trestle is seventy-five feet long; that waterways under the track of railroads are always points of danger, as wash-outs are more likely to occur at these places than elsewhere; that in the construction of railroads, it is always the custom of prudent engineers to make one waterway instead of two when it is practicable to do so; that in trestles there is always more or less danger of the abutments washing out, and these abutments have to be constantly and carefully watched; that it was possible at this place to have made two trestles, but the road would not have been as cheaply and safely constructed with two trestles as in the manner in which it was constructed. The defendant also introduced evidence that the land alleged to be injured was, before the road was built, and is now, a low, wet, swampy place, and was uncleaned and unfit for cultivation, and that Adams' branch in this swamp was always partially obstructed with logs, brush, etc.

The defendant asked the Court to charge the jury as follows:

1. That, upon the whole evidence, there was no evidence of negligence in the construction of the road, and that the plaintiff was only entitled to recover the cost of cleaning out Adams' branch. This was refused and defendant excepted.

2. That if the jury should believe, from the evidence, that the defendant had purchased and paid for the right-of-way over this land, and that turning these two branches together was the proper and prudent manner of constructing said road, then that any damages which accrued from the proper and prudent construction of the road in the usual manner were included in the price paid for the right-of-way, and the plaintiff in this action could only recover the cost of cleaning out Adams' branch. This was refused, and the defendant excepted.

3. That as the defendant had the right under its charter to construct the road, the plaintiff cannot recover unless he shows that the work was negligently done, or that he was damaged by some act of the road not necessary for its safe and prudent construction, and in this case there is no evidence of any negligence or useless damage, except in allowing Adams' branch to be filled with logs. This was refused, and the defendant excepted.

4. That the measure of damage for the injury done to the land above the road by reason of the obstructions allowed to accumulate in Adams' branch is the cost of clearing out such obstruction placed there by the defendant. This was refused, and the defendant excepted.

His Honor charged the jury that there was no negligence in the construction of the road as regards the land lying below the road-bed, and in arriving at their verdict they would not allow any damages for injury done this land; that if the jury believed that there was negligence in the construction of the trestle, and that it was not sufficient to carry off the water, and that by reason of such negligence the land above the road-bed was injured, they could allow such damages as they thought the plaintiff had suffered by reason of such flooding.

To this charge the defendant excepted, and assigned as error that there was no evidence that there was any negli-

gence in the construction of the trestle, or that the trestle was not sufficient to carry off the water, and because it was not responsive to the plaintiff's prayer for instructions in regard to the measure of damages, and because, in arriving at the plaintiff's damage, no witness had separated the damage done to the various tracts, but in estimating the amount of damage had done so for the whole tract, both that above and that below the road-bed.

There was verdict and judgment for the plaintiff, and defendant appealed.

*Mr. A. W. Graham*, for plaintiff.
*Messrs. J. B. Batchelor* and *John Devereux, Jr.*, for defendant.

AVERY, J.—after stating the case, proceeded: It is contended for the defendant that, though Fleming's branch was turned from its natural channel above the track and made to pass under a trestle with the waters of Adams' branch, the undisputed fact that the work of constructing the trestle was skillfully done and that it afforded ample room for the passage of both streams, relieves the company from liability to the owner of the tract of land on which the waterway is situated for damages caused by overflow, either above or below the trestle, because compensation for such injury to that land as was incident to a proper construction of the road across it, was allowed to the owner in estimating the value of the right-of-way.

It is conceded that one of the propositions upon which this contention is founded is, in the abstract, correct, and is supported by abundant authority. Such damage as is due to the erection of a waterway over a running stream at the point of its intersection with the line of a railway is considered, where the work is skillfully done, as included in the cost of the easement or to have passed as an incident to a grant of it; and the fact that it was so constructed as to pass

the water, even in time of ordinary freshet, being admitted, neither the owner of the servient tenement, nor the proprietor of a tract above can maintain an action for damage due to placing the structure across the stream. *Emry* v. *Railroad*, 102 N. C., 209; 6 Am. & Eng. Enc., p. 552; *Proprietors* v. *Railroad*, 10 Cush. (Mass.), 385; *Meares* v. *Wilmington*, 9 Ired., 73; *Wright* v. *Wilmington*, 92 N. C., 156; *Railroad* v. *Wicker*, 74 N. C., 220.

The damage directly due to the diversion of a watercourse from its natural channel is not considered to have been included in the estimated cost of the right-of-way, merely because the corporation, acting through its agents, may have found it less expensive to turn one branch into the channel of another, or to divert one from its natural bed, rather than construct two trestles or locate one at the original intersection of the stream with the railway. Whether an easement passed by private sale or condemnation, the estimate of its value is presumed to be made in contemplation of the observance on the part of the corporation of the golden maxim of the law, by so exercising its privilege as to inflict no unnecessary injury on the servient owñer. Lewis on Eminent Domain, § 571; Angell on Watercourses, § 97; *Ibid*, §§ 95, 95a; *Lillotran* v. *Smith*, 32 N. H., 94; *Embry* v. *Owen*, 6 Exc., 369; *Pugh* v. *Wheeler*, 2 Dev. & Bat., 50; *Walton* v. *Mills*, 86 N. C., 280; *Wilhelm* v. *Burleyson*, 106 N. C., 389; Gould on Waters, §§ 209, 214, 401, 405; *Hasher* v. *Railroad*, 60 Mo., 329; *Curtis* v. *Railroad*, 98 Mass., 428; *Lawrence* v. *Railroad*, 71 C. L. Repts., 643; Mills on Em. Domain, § 81 (p. 220); *Munken* v. *Railroad*, 72 Mo., 514; *Railroad* v. *Wicker*, *supra*.

It would seem to be the established rule in America that for any infringement of the plaintiff's right, as of that to have the two branches to flow in their accustomed channel, he would, as against a coterminous landowner above him, have the right to recover at least nominal damages if no actual injury were shown (2 Shearman & Red. on Neg., 733;

Gould, *supra*, §§ 401 and 405; Bishop's C. L., § 892); and where the flow of the stream is changed, or two running streams are united by a corporation holding an easement merely for the purpose of diminishing the cost of construction, and not because such changes are necessary to insure the safety and permanency of the structure built by it, the company must answer for such damages as are caused by divisions made, not to protect the lives and property of its prospective patrons, but to diminish the draught upon its treasury. Lewis on Em. Dom., §§ 61, 62 and 571; Mills on Em. Dom., § 81.

If Fleming's branch was turned away from its original channel and into Adams' branch merely to save money, and not lives and property, the road-bed might have been completed, possibly at greater cost to the company, but without inflicting the injury from overflow above and below the track, which is complained of. It being admitted, as a general rule, that such injuries to the servient tenement as are necessarily incident to a skillful construction of the road are considered as included in the compensation for the easement, it is clear that the skill is not to be measured by the cost of the structure alone, but by its completion upon such a location and in such a manner as to provide for the public safety and convenience without unnecessary injury to the land subject to the servitude. When the attempt is made to draw. and define the line of legal right between two such conflicting claimants, it is essential always to recur to the rule *sic utere tuo, ut non alienum loedas,* as the touch-stone by which the culpability of conduct is to be determined. The persons who fixed the cost of the easement contemplated the building of the structure with an eye to the safety and convenience of the public, and subject to this controlling purpose, with a proper regard for the rights of the servient as well as dominant owner.

The Court erred in submitting the question whether in their opinion there was negligence in the construction (not

the location) of the trestle by failure to provide a sufficient room for the passage of the water, and whether, by reason of such negligence, the land above the road-bed was injured, and in making the right of recovery depend solely upon their finding in this respect, as all of the evidence tended to show that the trestle afforded ample room for the passage of the water even in time of ordinary freshets. *Morgan* v. *Railroad*, 98 N. C., 247. The instruction was calculated to mislead them. The Judge should have told the jury that by diverting Fleming's branch from its channel above the railroad, unless it was necessary to do so in order to make the best provision for the safety of passengers and properly to be transported over the road, the defendant company incurred liability for at least nominal damages, and for such actual damage from overflow as was caused to the plaintiff's land above the railroad or below it, by diverting the branch from its natural course as well as by throwing logs into Adams' branch, or allowing obstructions to be placed in that portion of the stream covered by the easement.

If the true test should be hereafter applied by a jury, they might find a greater, or less sum, to be due than that fixed by their verdict for the land above the track; but since the charge was evidently calculated to mislead, the defendant has the right to demand a new trial as to that question. As we understand the facts from a statement that is not very full or clear, and as we gathered them from mutual admissions of counsel on the argument, the Court below also erred in giving the instruction that the jury must not allow any damage for injury done to the plaintiff's land lying below the railway. This was not an error of which the defendant complained, but, as the case is to be tried again, it is not improper to anticipate a question that must inevitably arise in the Court below on the next trial, and would probably have arisen now if plaintiff's appeal had been perfected.

If there was testimony tending to show (as seems to be conceded, and as the map indicated) that the plaintiff's land below the railroad, and above the point at which Fleming's branch originally entered into Adams' branch, was injured by overflow, and that such overflow was caused by turning the water of both into one channel, then the defendant was answerable also for such damage above the point of original intersection of the two streams, and it should have been estimated by the jury.

In cases of this kind, when the damage is due to a cause that may be removed, or a nuisance that may be abated, the measure of damage is not the difference in the market value of the land before and after the injury, but is estimated by comparing its productiveness before and after the flooding. *Spilman* v. *Navigation Co.,* 74 N. C., 675; 16 Am. & Eng. Enc., 984.

For the reasons given, we think there was error, and that a new trial should be granted.

Error.