THOMASON v. RAILROAD.

(Filed October 16, 1906).

*Railroads—Right-of-Way—Negligence—Damnum Absque Injuria—Sidetracks—Roundhouses—Pleadings.*

1. When a railroad company acquires a right-of-way, in the absence of any restrictions either in the charter or the grant, if one was made, it becomes invested with the power to use it, not only to the extent necessary to meet the present needs, but such further demands as may arise from the increase of its business and the proper discharge of its duty to the public.

2. A railroad company may, if necessary to meet the demands of its enlarged growth, cover its right-of-way with tracks and, in the absence of negligence, operate trains upon them without incurring, in that respect, additional liability either to the owner of the land condemned or others; and it is immaterial that it has become since its organization a branch of a great trunk line.

3. A complaint which alleges negligence in a general way, without setting forth with some reasonable degree of particularity the things done, or omitted to be done, by which the Court can see that there has been a breach of duty, is defective and open to demurrer.

4. While pleadings are to be construed liberally, they are to be so construed as to give the defendant an opportunity to know the grounds upon which it is charged with liability.

5. A person dwelling near a railroad constructed under the authority of law cannot complain of the noise and vibration caused by trains passing and repassing in the ordinary course of traffic, however unpleasant he may find it; nor of damage caused by the escape of smoke, cinders, etc., from the engines, if the company has used due care to prevent such escape as far as practicable.

6. The use of its sidetracks by a railroad as a hostlery for the engines of a short branch line is not unreasonable, nor is the fact that they are cleaned, fired and steamed without any roundhouse or smokestack sufficient to carry the smoke beyond the adjoining property, unreasonable or negligent.

ACTION by Henry Thomason and wife against the Seaboard Air Line Railway Company, heard by *Judge E. B. Jones* and a jury, at the February Term, 1906, of the Superior Court of VANCE.

Plaintiffs alleged that they were and had been for many years the owners of a lot upon which was situate a dwelling occupied by them as a residence in the town of Henderson. That prior to 1887 the Raleigh and Gaston Railroad, being about 96 miles in length, ran near to and its right-of-way abutted upon plaintiffs' lot. That in 1889 the Durham and Northern Railroad was constructed, Henderson being one of its termini. That the original corporations in 1901 were merged into and with other roads formed the defendant corporation. That by such merger a great through line of railroad was established, more than a thousand miles in length, which has since been greatly increased and the traffic has been such as to greatly increase the burdens upon lands lying along its lines far beyond the damages paid or contemplated in the creation of the Raleigh and Gaston Railroad, for which no compensation has been made. That since plaintiffs' purchase of said lot the defendant and its predecessor, the Raleigh and Gaston Railroad Company, have wantonly and negligently created and maintained and permitted on their premises, adjoining and contiguous to plaintiff's land, such nuisances as to greatly endamage plaintiffs in their comfort, persons and property, by rendering their said dwelling-house and premises unfit and dangerous for occupancy as a place of residence and interrupt their quiet and peaceable occupation thereof; which said nuisances consist in the use of certain sidetrack or tracks immediately in rear of plaintiffs' said premises and within a few feet thereof as a hostlery for storing, standing and keeping the locomotives of the Durham and Northern Division of the defendant's railways when not in use, the yard engine of the defendant at Henderson, and such other engines of the defendant as may for any cause be in Henderson and not in immediate use (Henderson being a terminal of said Durham and Northern Division). Here such locomotives were kept at night, and on Sundays and at other times when not in actual service,

and cleaned, fired, steamed, and kept in order without any roundhouse or other structure enclosing or covering the same, and without chimneys or smoke-stacks of sufficient height to carry the smoke, steam, dust, cinders and odors above the surrounding property. From the engines so placed, tended and handled there were daily and many times during the day and night the noise of escaping steam, the ringing of bells and blowing of whistles; in summer when the doors and windows of plaintiffs' said dwelling-house were open for light and air, smoke and cinders, ashes and dust were discharged and blown from such locomotives in and through the doors and windows, settling upon the occupants of the house and upon the furniture and furnishings, and soiling clothes, bedding, curtains and other articles therein, and accompanied by foul and offensive odors, which tainted and corrupted the atmosphere and rendered the dwelling-house and premises of plaintiffs unfit for habitation, whereby plaintiffs were greatly annoyed, inconvenienced, discomforted and damaged both in their persons and their property; further, the defendant, as plaintiffs are advised and believe, without authority in their charter to engage in such business, held a lot of land in excess of its right-of-way, adjoining plaintiffs on the northeast, and let the same as a coal and wood yard and suffered the lessee or occupant thereof to set up thereon, and to maintain and operate a steam-boiler without spark-arrester, engine and circular saw, near the line of plaintiffs' lot, near their front door and within thirty or forty feet of their sleeping-room, and plaintiffs were greatly and continuously annoyed and disturbed by the noise therefrom, and their fences, outhouses and dwelling were greatly in danger from fire.

To the foregoing cause or causes of action the defendant demurred *ore tenus*. The demurrer sets forth:

"1. The defendant demurs to so much of the plaintiffs' complaint as alleges damage 'from smoke, noise, odors, vibrations resulting from the operations of the defendant's railroad,'

because such allegation does not state a cause of action, inasmuch as the Seaboard Air Line Railway is authorized by law to operate a steam railroad, and the smoke, noise, odors and vibrations complained of are the results of the proper operation of such road, and the damage therefrom is *damnum absque injuria.*

"2. The defendant demurs to so much of the plaintiffs' complaint as alleges damage from fright or nervous trouble resulting therefrom, for failure to state a cause of action, because fright, unaccompanied by physical injury, is not an element of damage.

"3. The defendant demurs to so much of the plaintiffs' complaint as alleges injury from the operation of a steam-boiler and engine and circular saw on the defendant's property adjoining the plaintiffs' lot, for failure to state a cause of action, because, as is alleged, the said lot was leased for the purpose of establishing thereon a coal and wood yard, which is a lawful business when properly operated, and the defendant is not liable for any damage resulting from a nuisance created by the tenant in the operation thereof.

"4. The defendant demurs to so much of the plaintiffs' complaint as alleges damage by the construction of sidetracks into and for the benefit of said coal and wood yard, for failure to state a cause of action, because the Seaboard Air Line Railway is authorized by law to engage in the business of a common carrier, and in order to properly carry on said business it is its duty to construct sidetracks for the accommodation of the authorized enterprises constructed and operated along its right-of-way, and it is not liable for damage resulting from the lawful performance of such duty."

The defendant demurs to the sixth allegation of said complaint because the same fails to state a cause of action.

His Honor sustained the demurrer, rendering judgment as follows: "After due consideration, it is ordered and adjudged that the first, so far as it applies to the main line, and

second, third and fifth causes of demurrer be and the same are hereby sustained." Judgment accordingly. Plaintiffs excepted and appealed.

*H. M. Shaw* and *T. M. Pittman* for the plaintiffs.

*Day & Bell, Murray Allen* and *J. H. Bridgers* for the defendant.

CONNOR, J., after stating the case: Before proceeding to discuss the principal question presented upon plaintiffs' appeal, it will be well to notice the suggestion made in the complaint that defendant's right to use its right-of-way is limited by conditions existing at the time of the organization of the Raleigh and Gaston Railroad Company and the length of its track when completed. Whatever may be the extent of the rights acquired by the corporation against the owners of the land condemned, when a new corporation is formed by consolidation and merger with other corporations, pursuant to authority conferred by the Legislature, we cannot perceive how the plaintiffs, whose land, so far as appears, was never condemned and no right-of-way acquired over it, can complain of the enlargement of the business of the company. The right of defendant to operate a railway, carrying on the business of a common carrier, with all of its incidental powers and duties, is derived from the statute authorizing the consolidation and the merger effected pursuant thereto. Private Laws 1901, ch. 168; *Spencer v. Railroad,* 137 N. C., 107. Defendant succeeded to the rights of the Raleigh and Gaston Railroad Company and took them unimpaired. *Dargan v. Railroad,* 113 N. C., 603. It would seem that, upon the reason of the thing and from the nature of and the purpose for which the powers are granted, when the company acquired the right-of-way, in the absence of any restrictions, either in the charter or the grant, if one was made, it became invested with the power to use it, not only to the extent necessary to meet the then present demands, but such further

demands as arose from the increase of its business and the proper discharge of its duty to the public. Any other construction of its charter, in this respect, would defeat the very purpose for which it was created—the growth and development of the resources of the country through which it was constructed. It would seriously interfere with railroads in the discharge of their duty to the public, in a country the population and business of which are rapidly increasing, if because, to meet and encourage these conditions, they doubled their tracks, erected larger depots, made connections with branch lines, etc., new rights of action accrued against them in regard to the use of their right-of-way.

It is immaterial, for the purpose of deciding this appeal, that the Raleigh and Gaston Railroad, originally only ninety-six miles in length, has become a part of a great trunk line of one thousand miles, with branch lines connecting at Henderson and other points. It may, if necessary to meet the demands of its enlarged growth, cover its right-of-way with tracks and, in the absence of negligence, operate trains upon them without incurring, in that respect, additional liability either to the owner of the land condemned or others. We therefore attach no weight to the fact that the Raleigh and Gaston Railroad Company has become a part of the defendant's system of roads, or that the Durham and Northern has formed a physical connection with it as a part thereof.

Plaintiffs say that his Honor was in error in sustaining the demurrer, because they have alleged that the nuisances complained of were wantonly and negligently created and maintained. As we have seen in the discussion of defendant's appeal in this case, if this is true, the defendant cannot maintain the position that it is "doing a lawful thing in a lawful way," for it can never be lawful to use or exercise any power or right in a wanton and negligent way, and, for any damage inflicted thereby, a right of action accrues to the injured party. It becomes, therefore, necessary to ascertain

whether the conduct complained of is so characterized by plaintiffs. It is undoubtedly true that plaintiffs allege that defendant has "wantonly and negligently created, maintained and permitted on their premises, adjoining and contiguous to plaintiffs' said land, such nuisances," etc. If the allegation had ended there, it is clear that the defendant could have successfully interposed a demurrer, or at least demanded that the plaintiffs specify the matters and things which they claimed constituted a nuisance. A complaint which alleges negligence in a general way, without setting forth with some reasonable degree of particularity the things done, or omitted to be done, by which the Court can see that there has been a breach of duty, is defective and open to demurrer. *Hagins v. Railroad,* 106 N. C., 537; *Mizzell v. Ruffin,* 118 N. C., 69. The learned counsel well knew this elementary rule of pleading, and he therefore, after making the general averment, proceeds to say, "which said nuisances consist in the use of certain sidetracks," etc. It will be observed that it is not alleged that the said sidetracks were negligently constructed or used. The evident purpose of the plaintiffs was to allege that, by using said sidetracks, in the manner and for the purposes set forth, the defendant wantonly and negligently created and maintained a nuisance. This theory runs through the complaint in the statement of the cause of action to which his Honor sustained the demurrer.

It is manifest that, in stating their cause of action in respect to the use of the coal-yard, the construction and use of the spur-track, trestle, etc., a different theory is advanced. They allege "that without authority in the charter to engage in such business, defendant held a lot in excess of its right-of-way, etc., and let the same, as a coal and wood yard." They next allege that, upon said lot, defendant negligently maintained a trestle; that upon two occasions coal cars were negligently forced over the end of said trestle; that they were negligently permitted to remain in such position; that on

another occasion the fast mail train negligently ran into said spur-track and collided with locomotives. It will be noted that, in respect to each and every act specified as constituting the nuisance connected with the erection and use of the spur-track, negligence is specifically alleged. We are brought to the conclusion that, by a proper construction of the complaint, in respect to the first cause of action, the plaintiffs have alleged and intended to allege that, by using the side-tracks in the manner and for the purposes set forth, the defendant wantonly and negligently created and maintained a nuisance, or, to express the thought in different form, that the use of tracks for the purpose set out constitutes, as a matter of law, a wanton and negligent nuisance.

While pleadings are to be construed liberally, they are to be so construed as to give the defendant an opportunity to know the grounds upon which it is charged with liability. The cases bearing upon the subject are collected in Clark's Code, sec. 233, p. 194. Considered from this point of view, the appeal presents a question the solution of which is of great importance to the citizens and railroads of this State. It is not of first impression, having been frequently discussed and decided in other jurisdictions. *Chief Justice Beasley* in *Beseman v. Railroad,* 50 N. J. L., 235, says: "If a railroad by the necessary concomitants of its use, is an actionable nuisance with respect to plaintiff's property, so it must be as to all property in its vicinity. It is not only those who are greatly damnified by the illegal act of another to whom the law gives redress, but its vindication extends to every person who is damnified at all. * * * The noises and other disturbances necessarily attendant on the operation of these vast instruments of commerce are wide-spreading, impairing in a sensible degree some of the usual conditions upon which depend the enjoyment of property in their neighborhood; and, consequently, if these companies are to be regarded purely as private corporations, it inevitably

results that they must be responsible to each person whose possessions are thus molested." He proceeds to show that if such actions may be maintained, it would be impracticable to operate railroads.

In the case of *B. & P. R. R. v. Baptist Church,* 108 U. S., 317, upon the authority of which we held defendant liable on its appeal, *Field, J.,* drawing the distinction, says: "Undoubtedly, a railway over the public highway  *  *  * may be authorized  *  *  *  and if, when used with reasonable care, it produces only that incidental inconvenience which unavoidably follows the additional occupation of the streets by its cars, with the noises and disturbances necessarily attending their use, no one can complain that he is incommoded. Whatever consequential annoyance may necessarily follow from the running of cars on the road with reasonable care is *damnum absque injuria.* The private inconvenience, in such case, must be suffered for the public accommodation." The principle is well stated by Pollock in his work on Torts, page 128: "A person dwelling near a railway constructed under the authority of Parliament for the purpose of being worked by locomotive engines, cannot complain of the noise and vibration caused by trains passing and repassing in the ordinary course of traffic, however unpleasant he may find it; nor of damage caused by the escape of sparks from the engines, if the company has used due caution to prevent such escape as far as practicable.  *  *  *  If an authorized railway comes near my house, and disturbs me by the noise and vibration of the trains, it may be a hardship to me, but it is no wrong. For the railway was authorized and made in order that trains might be run upon it, and without noise and vibration trains cannot be run at all." The principle is illustrated by the maxim that "no action can be maintained for loss or inconvenience of an authorized thing done in an authorized way."

The question involved in this appeal is very clearly stated and discussed in *Atchison & R. Railroad v. Armstrong* (Kan.), 80 Pac. Rep., 978, and the conclusion reached, "That the company having been specifically authorized to make the alleged improvement in its road-bed, in the absence of any charge that it was unnecessary, or unskilfully done, or made at a place not authorized, it is not liable for damages as for the maintenance of a nuisance." The Court thus states the reason upon which the law is founded: "The damages alleged to have been sustained in this case are purely incidental and arise from a proper operation of the defendant's locomotive engines. Railroad companies are public corporations organized and maintained for public purposes. Railroads cannot be operated without causing more or less inconvenience to the public and discomfiture and possible damage to persons living adjacent to their lines. All such inconveniences and incidental damages must be endured by the individual for the public good."

In *Carroll v. Wisconsin Cent. R. R.,* 40 Minn., 168, the same conclusion is reached, the Court saying: "Railroads are a public necessity. They are always constructed under authority of law. They bring to the public great benefits. Operating them in the most skilful and careful manner causes to the public necessary incidental inconveniences, such as noise, smoke, cinders, vibrations of the ground, interference with travel at the crossings of roads, streets, and the like. One person may suffer more from these than another. * * * But the difference is only in degree, and not in kind. * * * If each person had a right of action because of such inconveniences, it would go far to render the operating of railroads practically impossible." *Parrot v. Cin., H. & D. R. R.,* 10 Ohio St., 627. The question underwent a thorough investigation in *Fisher v. Railroad,* 102 Va., 363, and the conclusion reached, with the authorities upon which it is sustained, are cited and discussed by *Keith, J.*

In *Jones v. Railroad Co.,* 151 Penn. St., 30 (47), *Williams, J.,* says: "The business authorized by the charter of a railroad corporation is the carriage of persons and goods. The work of construction is provided for as an indispensable preliminary, &ast; &ast; &ast; but in the operation of its road a company is liable only for negligence or malice. Smoke, dust and noise are the usual and, in the present state of knowledge on the subject, the necessary consequence of the use of steam and the movement of trains, just as noise and dust are the consequences of the movement of drays and carts over an ordinary highway. The resulting inconvenience and discomfort are, in both cases, *damnum absque injuria.*" *Romer v. St. Paul City Ry. Co.,* 75 Minn., 211.

In *Bates v. Holbrook,* 171 N. Y., 460, *Bartlett, J.,* says: "Damages which are inflicted upon abutting property-owners in the performance of public works, reasonably and properly conducted, are regarded as *damnum absque injuria.* This exemption rests upon the necessity of the situation and commends itself to all reasonable minds." For an able and exhaustive discussion of the question, see *Austin v. Augusta Term. Co.,* 108 Ga., 671; *Transportation Co. v. Chicago,* 99 U. S., 635. To the same conclusion the authors of the text-books have arrived. Baldwin Am. R. R. Law, 28.

Judge Elliott says: "A railroad company authorized by the Legislature to construct and operate a road for the public use is thereby relieved from many of the consequences attending the construction and operation of a road by an individual without such authority; and it may, perhaps, be stated as a general rule that, so long as it keeps within the scope of the powers and authority granted, a railroad company is not liable either civilly or criminally for a nuisance which is the necessary result of the construction and operation of its road in accordance with its charter." Elliott on Railroads, sec. 718; 21 Am. and Eng. Enc. (2 Ed.), 737; *Railway Co. v. Truman,* L. R., 11, App. Case (1886), 49; *Adams v. Railroad,* 110 N. C., 325.

While not directly in point, the principle upon which defendant claims immunity from liability is recognized by this Court in several cases. In *Morgan v. Railroad,* 98 N. C., 247, the action was for frightening plaintiff's horse. *Merrimon, J.,* said: "The defendant certainly had the right on its roadway to move its locomotives with or without cars attached to it, in the orderly course of such work, to and fro in making up its trains, etc. The noises ordinarily—naturally—incident to this work, when done, when it may be lawfully done, do not constitute negligence or nuisance.  *  *  * Harm thus sustained is *damnum absque injuria.*" *Harrell v. Railroad,* 110 N. C., 215. In *Sawyer v. Davis,* 136 Mass., 229, the same principle is announced.

It will be observed that plaintiffs do not allege that defendant has exceeded its right-of-way. The complaint is that it has used its sidetrack as a hostlery for the engines of the Durham and Northern Division of defendant. We may take notice of the fact that the Durham and Northern is a short branch line, and but few engines can be used on it. We cannot see that the use by defendant of its sidetracks for the purpose stated is unreasonable. It is said they are kept there at night and on Sundays, and cleaned, fired and steamed without any roundhouse enclosing or covering the same. We cannot see anything unreasonable or negligent in so using and handling the engines. There is no suggestion that by carelessness or want of due care and caution any other or different noises are made than is usual or necessary in caring for the engines and preparing them for use. It is said that no smoke-stack is provided of sufficient size to carry off the smoke, dust, etc., above the surrounding property. There is no suggestion that the smoke-stacks attached to the engines are not such as are generally in use. It would hardly be insisted that a railroad company is required to erect and maintain a roundhouse at every station where a short branch or feeder makes connection with it. There is no allegation that it is usual to do so. We are not able to say, as a matter

of law, that defendant should have a roundhouse or smoke-stack sufficient to carry the smoke beyond the adjoining property. It may be that if, to protect plaintiffs' property from dust, smoke and cinders, a way was provided to cast them upon the premises of others, not so near the track, a liability, to them, would be incurred. Plaintiffs say that from the engines so placed, tended and handled, they were annoyed by the ringing of bells, blowing of whistles, smoke, cinders, etc. These are all, as we know from observation and experience, the usual, ordinary, and, to a certain extent, necessary concomitants of using and operating locomotive engines. To subject the company to actions for damages for them would be to practically render them useless.

While the law will afford a remedy for damage sustained by the negligent or unreasonable use of these powerful agencies of industrial life and progress, to impose unreasonable restrictions would be unwise. In this day when almost unlimited legislative control over these public agencies is being asserted and sustained by the courts, by the requirement of larger facilities and greater security for travel and transportation by double tracks, union depots, block systems, and many other modern devices, it would seriously interfere with such control to put new and unreasonable restrictions upon their mode of operation. Again, this and all other courts have imposed upon railroads very stringent rules requiring them to give warning of the movement of their engines by ringing bells, sounding whistles, etc. Failure in this respect, followed by injury to persons upon the track, results in large verdicts for damages. The law must be reasonable and just; it would be neither if, for meeting its demands on the one hand, it subjected the corporation to actions for nuisances on the other. The slightest reflection will show the wisdom of the law in this respect.

We have treated the plaintiffs' complaint as in an action for a nuisance and not for compensation demanded by reason of a constructive "taking" of his property. We would not be

understood as abating in any degree the fundamental principle of law, that no matter how urgent the demands of the public may be or how necessary to the progress of the country, no man's property may be taken without compensation. In those cases wherein the right is asserted to flood lands, or otherwise appropriate or subject them to an additional burden, the question of negligence is not involved. Courts uniformly hold that where the action is for damages, by way of compensation which, when paid, secures an easement, the owner of the property is entitled to recover.

In *Staton v. Railroad,* 111 N. C., 278, the injury for which compensation was sought was, as said by *Shepherd, C. J.,* equivalent to a "taking" and an appropriation, hence the question of negligence was not presented. This theory was adopted in *Ridley v. Railroad,* 118 N. C., 996, and *Parker v. Railroad,* 119 N. C., 677.

*Douglas, J.,* in *Beach v. Railroad,* 120 N. C., 498; *Lassiter v. Railroad,* 126 N. C., 509, and *Geer v. Water Co.,* 127 N. C., 349, says that in such cases permanent damages should be assessed, and, when paid, the defendant acquires an easement to so use the lands. This must in the nature of the case be so. There is no statutory mode prescribed for a railroad to acquire an easement by condemnation to flow water over adjoining lands. The necessity to do so, to protect and render safe its road-bed, is apparent; hence the courts will not enjoin the company. *Railway Co. v. Mining Co.,* 112 N. C., 661; *Merrick v. Railroad,* 118 N. C., 1082. As said by *Judge Douglas,* the defendant cannot, by law, acquire a right to continue a legal trespass, by paying damages; hence the law permits the acquisition of the easement, in such cases, by the payment of permanent damages, the judgment having that effect. *Brown v. Power Co.,* 140 N. C., 333. It is manifest that no easement can be acquired to emit smoke, cinders, make noises, causing vibrations, etc.

*Beasley, C. J.,* says: "The laws, in providing for the acquisition and condemnation of lands, authorize the taking of

THOMASON *v.* RAILROAD.

such lands only as are requisite for the necessary structures of the road and the accommodation of its business, and require the payment of damages only to that class of land-owners. These corporations are not permitted to sequester any other property, nor to compensate for other damages. The central idea of the system is that for incidental damages these companies are not responsible." When it is said that, in contemplation of the law, there is no wrong without a remedy, it must be noted that the term "wrong" has a legal signification distinct from "damage," and is synonymous with *"injuria"*—signifying a legal injury—hence, the maxim *damnum absque injuria,* which "is used to designate damage which is not occasioned by anything which the law esteems an injury."

The same argument which is made to sustain this action may, with equal force, be made in every case wherein this maxim is invoked. It is an illustration of the truth that the law is not a system of logical or of ethical perfection, but a practical science, and that almost all of its general principles, however wide their application may seem to be, have on all sides their reasonable limitations. The value of property is constantly being affected by the conduct of adjoining owners. Changes in the value of property in towns and cities are constantly being made by the demands of trade, manufacturing, channels of travel and many other causes. So long as they are done within legal rights and without negligence there is "damage," but no *injury,* therefore no action. Of course, if the business engaged in is *per se* wrongful, hurtful to health or otherwise destructive of legal rights, another maxim of the law, *sic utere tuo ut alienum non laedas,* applies. Without further pursuing the interesting question involved, we find, upon principle and in the light of the authorities, no error in his Honor's ruling sustaining demurrer.

The judgment must be

Affirmed.