W. N. BARNES v. NORTH CAROLINA PUBLIC-SERVICE CORPORATION.

(Filed 5 November, 1913.)

**Street Railways—Operation of Cars—Duty of Traveler—Negligence.**
The running of an electric car upon its tracks on a city's street in the usual and customary manner at a moderate speed and without further noise than is necessary is not negligence; and where a traveler in a buggy voluntarily drives in the direction from which it is approaching, is able to safely drive into a side street, and is injured, without coming in contact with the car, because a colt which he was leading, becoming frightened, overturned the buggy, the injury complained of is the result of his own negligence, and he cannot recover damages therefor. The reason that this rule is not applicable to automobiles (ch. 107, Laws 1913), pointed out by CLARK, C. J.

APPEAL by plaintiff from *Shaw, J.,* at August Term, 1913, of GUILFORD.

*John A. Barringer for plaintiff.*
*Taylor & Scales for defendant.*

CLARK, C. J.   On 31 May, 1912, the plaintiff in a buggy was driving a horse on Church Street in Greensboro. Riding with him was a boy, leading a young unbroken colt in the rear of the buggy by a halter. The street car of the defendant was on its regular run on said street. When the car had reached a point about 75 yards south of the intersection of North Davie Street with said Church Street the motorman on the car and the plaintiff saw each other, they being then about 150 yards apart. The plaintiff drove on, he says, about 75 yards further towards the car, the horse and colt showing signs of fright at the approaching car and becoming more frightened as it drew nearer. The motorman did not stop the car, or slacken speed, and when the car came abreast of the buggy, the colt jumped upon one of the rear wheels of the buggy and upset it, throwing the plaintiff to the ground, whereby he was injured. There was no collision of any kind. There was nothing unusual about the car, which was running at the usual rate of speed and making no noise except that necessarily incident to the operation of street cars.

The plaintiff testified that after the horses became frightened, he continued to drive towards the car, and even started to drive across the track directly in front of it. He further testified that the colt was unbroken and skittish, and that he would have known it would be frightened by the car if he had thought about it; that there were cross streets near where the accident happened which he could have turned into after his team became frightened, but did not do so because he thought he had as much right on Church Street as defendant's car.

Upon this evidence his Honor properly allowed the motion to nonsuit. It appears from the plaintiff's own evidence that he was not injured by reason of any negligence on the part of the defendant's motorman, but by reason of his horses becoming frightened by a street car operated in the usual method. It is true that he had as much right on the street as the car, but the car had as much right as he did. It was serving the public in the usual and ordinary manner and without any unnecessary noise. The plaintiff should not have driven further in the direction of the car after he saw that his team was

frightened, when he could have turned out in the by-street. The injury was caused by his own want of care and not by any want of care on the part of the defendant.

In *Doster v. Street R. R.,* 117 N. C., 661, the Court said: "Where a horse is being driven, or is running uncontrolled, along a highway parallel to a railway of any kind, though it gives unmistakable evidence by its movements that it is alarmed at an approaching train or car, the engineer or motorman in charge is not negligent in failing to diminish the speed in the absence of a collision." The Court further said: "The plaintiff voluntarily exposed himself, his buggy and his mule to the risk of any accident which might be caused by the animal taking fright at the usual noise incident to running a street car by electricity, there being no testimony tending to show that the motorman wantonly or maliciously made unnecessary noises for the purpose of scaring the animal."

There is no suggestion in the complaint, or the testimony, that the motorman in this case wantonly or maliciously ran the car to where the plaintiff was. In the *Doster case* the plaintiff waved the motorman to stop the car, and called to him to do so, and finally got out of his buggy and held the bridle of his horse. In the present case the plaintiff made no motion of any kind nor gave any signal for the car to stop, but drove on towards the car.

The rule laid down in *Doster v. Street R. R., supra,* that a street railway company is not liable for an injury resulting from horses being frightened by the noises or appearance of the car when operated in the usual manner, has been cited and approved. *Everett v. R. R.,* 121 N. C., 520; *Dunn v. R. R.,* 124 N. C., 257; *Moore v. R. R.,* 128 N. C., 458.

"Railroad companies running their trains in a lawful and usual manner are not responsible for damages occurring to travelers along the road in consequence of their team taking fright at the noises ordinarily made by the operation of such trains." 2 Thompson Neg., par. 1908; 2 Shearman and Redfield Neg. (6 Ed.), sec. 485; *Morgan v. R. R.,* 98 N. C., 247; 36 Cyc., 1487, 1488, 490; Clark on Street R. R. (2 Ed.), 114.

The reason of the rule is thus stated in *Doster v. Street R. R.,* 117 N. C., 663: "People who pay their money in the

expectation of being carried expeditiously are not to be delayed by every person who ventures to test the nerve of his horse or mule by driving it along the same street on which a company runs its street cars by electricity. When persons subject themselves to such risk, and no collision with the moving car ensues, the injury caused by the conduct of frightened animals is deemed in law to be due directly to their own want of care."

A condition might occur in which a street car should halt for a moment, as if, for instance, if it should suddenly come around a corner, frightening a horse, and the motorman can see that by halting a moment the driver may be given an opportunity to turn around and drive off in safety. In this and other conceivable cases it would be negligent for the motorman not to stop his car a brief period to give the driver of the conveyance an opportunity to save himself. But nothing of this kind occurred in this case.

The plaintiff testified that he was 150 yards from the car when he first saw it, and after seeing it he continued to drive towards it a distance of 75 yards before the accident occurred. Both car and plaintiff were traveling towards the point where North Davie Street crosses Church Street. The plaintiff should not have expected that the car should stop and wait till he might get to Davie Street and turn down it. He should have given way for the car, for he knew that his animals were frightened. He could have turned back or could have turned down a side street. The car could not have done this. Nor, as it was engaged in a service for the public, should the plaintiff have expected that the car should stop when he had ample opportunity to do so himself and avoid the injury. The proximate cause of his injury was his own conduct. *Strickland v. R. R.,* 150 N. C., 4.

We need not consider the evidence as to the nature of the plaintiff's injuries, which were serious. There was certainly *damnum,* but not *injuria.* The plaintiff was not injured by a collision with the defendant's car, but by the colt overturning his buggy and throwing him out. The colt was frightened when the defendant's car was where it had a right to be, in the public service, and was being operated in the usual manner.

The colt was frightened because the plaintiff did not choose to turn down one of the by-streets, but drove on probably 75 yards towards the car, which was frightening his team more and more as he approached it. The car was not running unusually fast. Indeed, it appears that the plaintiff was going at the same speed, as each moved 75 yards after the plaintiff and motorman saw each other.

There is a wide distinction in many respects between a street car and an automobile. The street car is engaged in a public service and running regular schedules, which it owes a duty to the public to observe. It is running on a regular track, and cannot turn out, nor can it stop without losing its schedule. The noises it makes are not so likely to frighten teams as an automobile, and the streets on which the street cars are to be found are well known to drivers, who can avoid them; whereas an automobile may be met with anywhere and unexpectedly. A street car runs slower and makes frequent stops. For these and other reasons the statute has prescribed the speed limit of automobiles and the duties of chauffeurs on meeting people whose teams are frightened. Chapter 107, Laws 1913.

The judgment of nonsuit is

Affirmed.