H. GLENN HALL v. PIEDMONT RAILWAY AND ELECTRIC COMPANY.

(Filed 11 November, 1914.)

**Street Railways—Trials—Negligence—Evidence—Questions for Jury.**

> When a judgment of nonsuit is granted upon the evidence, the evidence is viewed on appeal in the light most favorable to the plaintiff; and in this action to recover damages for the death of plaintiff's horse, wherein there was evidence in plaintiff's behalf that he was sitting on his horse in a narrow street of a town, when the horse, becoming frightened on the approach of the defendant's car, ran backward in the direction the car was going, which the motorman must have seen, but failed to stop the car or slacken the speed, which he could have done in time, resulting in the injury, while the plaintiff was doing all he could to control the horse and avoid it. *Held*, it was sufficient to be submitted to the jury upon the question of defendant's actionable negligence. *Barnes v. Public-service Corporation*, 163 N. C., 363; *Doster v. Street Ry.*, 117 N. C., 661, cited and distinguished.

APPEAL by plaintiff from *Lyon, J.*, at March Term, 1914, of ALAMANCE.

*W. H. Carroll* for plaintiff.
*E. S. Parker, Jr.*, for defendant.

CLARK, C. J. This was an action to recover damages for the negligent killing of plaintiff's horse in October, 1912. On said date the plaintiff

was sitting sideways on his horse on Front Street in Burlington at 11 o'clock a. m., when the defendant's car, going west, frightened the horse, which ran backward, on a narrow street in the same direction the car was going. The owner slipped off, but held the reins. The motorman must have seen the horse backing in the direction of his car, but failed to stop the car or to slacken his speed so as to prevent a collision.

This being a nonsuit, the evidence must be taken in the light most favorable to the plaintiff. *Cotton v. R. R.,* 149 N. C., 227; *Shepherd v. R. R.,* 163 N. C., 521.

The defendant relies upon *Barnes v. Public-service Corp.,* 163 N. C., 363, and *Doster v. Street Railway,* 117 N. C., 661; but those cases differ very much from this. In the *Barnes case* the plaintiff, in a buggy, was driving his horse through the street and a boy in the buggy was leading a young unbroken colt by a halter. The motorman and the plaintiff saw each other when about 150 yards apart, but the plaintiff continued to drive some 75 yards further, coming towards the car, the horse and colt becoming more frightened. The owner of the horses could have turned out, after he saw the condition of his animals, into the cross-streets, but says he did not do so because he thought he had as much right on the street as the car. The motorman proceeded until the car was abreast of the buggy, when the colt jumped upon the rear wheels of the buggy and upset it, throwing the plaintiff to the ground and injuring him. There was no collision with the car, which was running at its usual speed and making no unusual noise. In that case the Court held that the plaintiff was negligent, in that he continued to drive towards the car when he saw that his team was frightened and when he could have turned out into one of the cross-streets.

In *Doster v. R. R.,* cited in the last named case, the horse was being driven along the highway parallel to the railway, and, becoming frightened, rushed upon the track ahead of the street car and was injured. The Court held that in such case the street railway company would be responsible for the consequences of the collision only when "by proper watchfulness on the part of the motorman the danger might have been foreseen and the injury prevented by using the appliances at his command." This was put upon the ground that the public service should not be interrupted by requiring the cars to stop because the driver "ventures to test the nerve of his horse or mule by driving it along the street" when he sees that it is frightened by the moving cars, and can turn out or stop his horse and hold it till the car passes.

In the present case the horse ran backwards towards the car, and though the motorman saw that its owner was holding the bridle and attempting to prevent the horse backing on the line, and that unless the car stopped there would likely be a collision, he made no effort to do so,

and the horse was injured by the car striking him. The motorman, who could have seen the horse for 300 feet, did not "use the appliances at his command" and stop the car, so as to prevent the injury. The plaintiff was doing all he could to prevent the collision, but could not. The motorman saw this, and could have prevented it, but did nothing. It may be that if the defendant had put on evidence he might have satisfied the jury of a different state of facts. But upon the evidence the case should have been submitted to the jury. *Hines v. R. R.,* 156 N. C., 222.

In *Bullock v. R. R.,* 105 N. C., 180, it was held that where the engineer with proper watchfulness should have seen that a wagon was stalled upon the track, it was his duty to use "every means and appliance in his power" to stop the train, and if he does not, the company is liable for his negligence. In *Brinkley v. R. R.,* 126 N. C., 88, the same was held where the horse was running loose on the track and would not get off and there was a cattle-guard or trestle ahead of it which it could not cross.

The subject is interestingly discussed with full citation of authorities by *Hoke, J.,* in *Snipes v. Mfg. Co.,* 152 N. C., 42, in which it was held that if the engineer with proper diligence could have seen a person in front of his engine in such a position that ordinary effort on his part would not likely avail to save him from injury, and that a collision was not improbable, it is negligence if he fails to use all means at his command, consistent with the safety of the passengers or property in his charge, to prevent the collision or injury. That principle applies with greater force here, where the frightened horse did not have intelligence to attempt to avoid the injury and the motorman saw this and that the horse's owner was vainly endeavoring, with all his power, to prevent the collision.

The verdict of nonsuit must be
Reversed.