Moses et al. *v.* Pittsburgh, Fort Wayne and Chicago Railroad Co.

HIRAM P. MOSES, THOMAS KANE, and DENNIS LORDIN, Appellants, *v.* THE PITTSBURGH, FORT WAYNE AND CHICAGO RAILROAD COMPANY, Appellees.

APPEAL FROM COOK.

Where a railroad company by its charter, is authorized to bring its road to a city, and acquire property within it, the right to enter the city is also conferred.

Where by a city charter, its local authorities are vested with exclusive control over the streets, as in the city of Chicago, and those authorities grant permission to locate railway tracks along a street, the owners or occupants of property fronting on such street, cannot enjoin the laying of such tracks, nor receive any damage or compensation for such use of a street.

The fee simple title to the streets of the city of Chicago, as in other cities, is vested in the municipal corporation.

The use of steam as a motive power, may be used, along the streets of a city, by proper permission.

THIS was a bill in chancery filed by the appellants against the appellees on the 22nd day of March, 1858, in the Circuit Court of Cook county, setting forth—

That on the 18th day of June, A. D. 1855, there was, and before that time had been, a certain street or public highway called Beach street, commencing at or near the south line of block seventy-three, in school section addition to Chicago, and running thence north to Harrison street, in said city, of the width of forty feet, including the spaces on each side for sidewalks, which said street was as above described, marked and laid out upon the original recorded plat of said school section addition to Chicago, and then became a public street and highway of said city to be used as such, and ever since has, with the additions and extensions made thereto, continued to be one of the public streets and highways of said city.

That Hiram P. Moses was, and still is, the owner in fee of the north half of north half of block seventy-three, in said school section addition to Chicago, lying and being contiguous to said Beach street, and fronting thereon about one hundred feet along said street, together with all and singular the appur-

tenances unto the said premises belonging. That Sherman Kane, another of complainants, about the time aforesaid, was, and still is, the owner in fee of lot forty-three, in block sixty-five, in said school section addition, lying and being contiguous to said Beach street, and fronting thereon for about the distance of one hundred and twenty feet, together with the appurtenances. That Dennis Lordin was, and still is, the owner in fee of lot forty-two, in block sixty-five, in said school section addition, lying and being in front along and contiguous to said street, together with all and singular the appurtenances unto the said premises belonging.

That complainants have the right to use said Beach street in front of their said premises as a highway ; and that no person or persons have any right to interfere with the free and unobstructed use by them of the said street for the purposes of a public highway along and in front of the said premises.

That in the early part of 1856, Hiram P. Moses caused to be built upon his said premises a large machine shop for the manufacture of divers kinds of machinery, which said building extends about sixty-five feet in front along said street, and is erected one foot distant from the east line of said Beach street. That Thomas Kane, sometime in the month of August last, commenced to build, and has in process of erection, a building of the value of about $40,000, for the purposes of stores, grocery stands, etc. And that in order that said buildings so erected, and to be erected, may be of any service for the purposes for which they were built, and in order to carry on business therein, that it is necessary that there should be space in front of their said buildings for horses and carts, drays and wagons to back up and stand without hindrance to load and unload from said machine shop, and also from said store buildings when the same are completed. Also, that there are two dwelling-houses upon the premises of Dennis Lordin, used and occupied as such.

That by reason of the narrowness of said street, and its inadequacy to accommodate the public, or from some cause, on or about the 18th day of June, A. D. 1855, the Common Council of the city of Chicago made and passed an order directing the city surveyor to proceed to survey, mark and plat, and record the land necessary to be taken to open and extend said Beach street sixty feet wide from its then terminus on the south side of block seventy-three aforesaid to Twelfth street in said city, by taking forty feet in width from the west side of blocks 74, 75, 76, and twenty feet in width from the east side of blocks 61, 62, and 63, in said school section addition. And also to widen said Beach street from the south line of block 73 afore-

said to Polk street, taking twenty feet in width from the east line of block 64 in said school section addition. And that such proceedings were had, as that Beach street was widened to sixty feet from Twelfth street to Polk street, and remaining and being of its original width of forty feet from Polk street to Harrison street.

That their respective parcels of land aforesaid were largely assessed by the said freeholders or commissioners for the purpose as aforesaid, as being real estate deemed benefited by the improvement aforesaid. That the said commissioners in making the said assessments upon the real estate of complainants, acted in pursuance of the order and direction of the Common Council of said city, and that complainants paid the several assessments aforesaid. And that the said assessments or moneys paid in that behalf, were appropriated to the payment of the damages resulting to persons to whom damages or recompense were by said commissioners ascertained to be due, in pursuance of the order of said Common Council before mentioned. And that no damages were awarded to them, or either of them, for or on account of the said improvement made as aforesaid.

That said street was extended and widened as aforesaid for the use and benefit of the public and complainants as a public highway, and was widened as aforesaid because it was found necessary to do so in order that the public highway, or Beach street, at the place where the same was widened, might be of a width sufficient to accommodate all persons using the said street as a public highway, and that said street is in no part thereof of a greater width than the use of said street as a public highway actually requires.

That by reason of the narrowness of said Beach street, through which is constantly passing a large number of teams, carts, wagons, and other vehicles standing and passing upon and along said street for the legitimate, reasonable and ordinary purposes of business and travel, that a railroad track upon and along said street, opposite and in front of said premises, on which locomotives and railroad cars might, etc., run, would greatly obstruct said street for public use, and seriously obstruct and damage the business of complainants carried on as aforesaid, and would greatly injure and damage their said property assessed for the benefits therewith resulting by reason of the improvement, or widening said street as aforesaid, which said assessments were fully paid by complainants.

That by an act of the legislature of the State of Illinois, approved February 5, 1853, entitled, "An Act to incorporate the Fort Wayne and Chicago Railroad Company," the Pittsburgh, Fort Wayne and Chicago Railroad Company became incorpo-

rated under the name and style of the Fort Wayne and Chicago Railroad Company, to which said act of incorporation for the powers, privileges, franchises and duties thereby conferred upon and pertaining to the said railroad company, and for the provisions of said act, complainants, for more certainty, refer. That afterwards, by an act of the legislature of the State of Illinois, entitled, " An Act to amend an act entitled an act to incorporate the Fort Wayne and Chicago Railroad Company," approved February 5, 1853, and approved February 22, 1854, the said railroad company were authorized and empowered in all cases where they might not be able to acquire the right of way through any lands or premises where necessary for the purposes of said railroad, by purchase or donation, to obtain the same in the mode provided by an act entitled, " An Act to amend the law concerning the right of way for the purposes of internal improvement," approved June 22, 1852. And it was thereby enacted that said company should be entitled to all the beneficial provisions thereof, or of any subsequent general law on the same subject.

That afterwards the corporate name of said railroad company became changed from the style of Fort Wayne and Chicago Railroad Company to the name and style of Pittsburgh, Fort Wayne and Chicago Railroad Company, by which the said company is now known and designated.

That said railroad company has not, under all and any of the acts of incorporation thereof by the legislature of this State, any right, power, or privilege conferred upon the said company of building or constructing any railroad track, or maintaining the same, or of running their line of railroad within the corporate limits of the city of Chicago, or of procuring the right of way for the purpose of constructing or laying down any railroad track within the corporate limits of said city. And that said railroad company is in no manner empowered by law to take or use the streets or public highways of said city for the purpose of laying down a railroad track thereon.

That afterwards, to wit, on the 17th day of November, 1850, the Common Council of the city of Chicago, in due form of law, passed an ordinance, approved on the day and year last aforesaid by the mayor of said city, whereby the said Common Council pretend to authorize and empower the said Pittsburgh, Fort Wayne and Chicago Railroad Company, amongst other things, to lay down, maintain and operate a railroad track or tracks, with necessary switches, turn-outs and side tracks, in the street in the city of Chicago, running north and south on the section line of section 21, township 39 north, range 14 east of 3rd principal meridian, from the south line of North

street to the north line of Twelfth street; and then on Beach street aforesaid to Harrison street, upon the terms, conditions and provisions in said ordinance specified, which said ordinance the said railroad company afterwards, and on or about the 20th November, 1856, accepted.

That at the time when said Common Council passed the foregoing ordinance, that the said council had no legal right or power under, or by virtue of the charter of the city of Chicago, or of the laws of this State, to permit or authorize said railroad company to occupy said Beach street in manner, or upon the terms or conditions set forth in said pretended ordinance passed as aforesaid. And that said ordinance, so far as the same relates to Beach street, or authorized said railroad company to use said street in manner in said ordinance specified, was at the time of its passage, and still is, utterly null and void, and without any legal authority whatsoever; and that said ordinance gave said company no right or authority to use said street in manner therein provided.

That the said Pittsburgh, Fort Wayne and Chicago Railroad Company are now proceeding under color of the said ordinance, but without legal rights or authority, to lay down, maintain and operate a single railroad track upon and along the whole length of Beach street aforesaid, and are already laying down, maintaining and operating said track upon and along said Beach street, under the pretended color and authority of the acts incorporating said railroad company, the chartered and corporate powers of the city of Chicago, and the ordinances of said city passed in pursuance thereof as aforesaid, and without the consent of complainants, or any of them, ever had or obtained in that behalf, and have already placed a portion of their said railroad track in front of the premises of complainants, and are proceeding to operate the same without the consent, and contrary to the express wishes of complainants, by means whereof the said railroad company are greatly obstructing the said Beach street, are hindering and interfering with the travel thereon, and have, as to so much of said street as is by said company occupied and used, as aforesaid, actually diverted and changed the same from the purposes for which the same was widened and opened as aforesaid, that is to say, from the purposes of a public highway, so far as laying down a single track in the centre of said street, and transporting thereon in the cars of said company, passengers and freight through, to and from the city of Chicago, in the regular course of business. And your complainants insist that the Common Council of said city has not the power to allow, permit or authorize any person or corporation to encroach upon or injure the said Beach street in

manner aforesaid, or in any other way or manner, or to divert or change, or to authorize any person or corporation to divert or change the said Beach street or any part thereof, from the use or purpose for which the same was dedicated, widened and extended as aforesaid, and to direct or permit the same, or any part thereof, to be used for any other or different purpose whatsoever.

That if the said railroad company is permitted to lay down, maintain and operate their said railroad track, with or without necessary switches or turn-outs, and side tracks, in, along and upon said Beach street, that the complainants will be continually and permanently injured in their said business, by the danger of the approach of trains of cars, and be deprived of the use of said street, or a portion thereof, for the purposes of a public highway along and in front of their said premises at the time of the passing of the trains of said company ; that said company are already using and contemplate using locomotives driven by steam, in operating their said track upon and along Beach street, and in front of the premises aforesaid, in conducting railroad cars over and along said track, and that the sparks and cinders therefrom will greatly endanger the safety of the buildings upon the said premises ; by means whereof the enjoyment of the property will be rendered precarious upon and along said street. That complainants cannot use and occupy the said street as a public highway in front of their said premises as otherwise, without great fear and apprehension for their personal safety from running cars upon and along said street.

Complainants aver that said railroad company has not the right, and is not legally authorized or empowered to lay down, maintain and operate a railroad track or tracks, with necessary or any switches, turn-outs or side tracks, or otherwise, upon and along said Beach street.

Bill prays that the said Pittsburg, Fort Wayne and Chicago Railroad Company, its privies, agents, employees and servants, and all others confederating therewith, be perpetually enjoined, restrained and prohibited from laying down, continuing, maintaining, or operating further, any railroad or railroad tracks, with or without switches, turn-outs or side tracks, or in any way supporting the same hereafter, in, upon or along Beach street aforesaid.

The defendants filed a general demurrer for want of equity, which was *pro forma* sustained by the court, MANNIERE, Judge, presiding, and the bill dismissed. From which decree the complainants appealed, and bring the case to this court.

The errors assigned are : the sustaining of said demurrer, and the rendition of said decree.

C. BECKWITH, and SHERMAN & KALES, for Appellants.

JUDD & WINSTON, and GLOVER & COOK, for Appellee.

CATON, C. J.   By its charter this company was authorized to bring its road to Chicago, and to acquire property within the city. By this it was intended to allow the road to run into the city. It was not the intention that it should be compelled to stop so soon as it touched the city limits, and thus render the road comparatively useless both to the public and the company.   The language of the charter requires no such limited construction, and the objects of the law would be evidently frustrated by so illiberal an interpretation.

But the complainant is the owner of property on Beach street, and the Common Council of the city have authorized the defendant to lay down its track through the centre of that street, and to run its cars and locomotives over it ; whereby the complainant's property will be injured, for which he has received no compensation ; and he asks an injunction to restrain the defendant from exercising the right thus granted.   By the city charter the Common Council is vested with the exclusive control and regulation of the streets of the city, the fee simple title to which we have already decided is vested in the municipal corporation. The city charter, also empowers the Common Council to direct and control the location of railroad tracks within the city.   In granting this permission to locate the track in Beach street, the Common Council acted under an express power granted by the legislature, so that the defendant has all the right which both the legislature and the Common Council could give it, to occupy the street with its track.   But the complainant assumes higher ground, and claims that any use of the street, even under the authority of the legislature and the Common Council, which tends to deteriorate the value of his property on the street, is a violation of that fundamental law which forbids private property to be taken for public use without just compensation.   This is manifestly an erroneous view of the constitutional guarantee thus invoked.   It must necessarily happen that streets will be used for various legitimate purposes, which will, to a greater or less extent discommode persons residing or doing business upon them, and just to that extent damage their property, and yet such damage is incident to all city property, and for it a party can claim no remedy.   The Common Council may appoint certain localities, where hacks and drays shall stand waiting for employment, or where wagons loaded with hay or wood or other commodities shall stand waiting for purchasers.   This may drive customers away from shops or stores in the vicinity, and

yet there is no remedy for the damage. A street is made for the passage of persons and property; and the law cannot define what exclusive means of transportation and passage shall be used. Universal experience shows that this can best be left to the determination of the municipal authorities, who are supposed to be best acquainted with the wants and necessities of the citizens generally. To say that a new mode of passage shall be banished from the streets, no matter how much the general good may require it, simply because streets were not so used in the days of Blackstone, would hardly comport with the advancement and enlightenment of the present age. Steam has but lately taken the place, to any extent, of animal power for land transportation, and for that reason alone, shall it be expelled the streets? For the same reason camels must be kept out, although they might be profitably introduced. Some fancy horse or timid lady might be frightened by such uncouth objects. Or is the objection not in the motive power used, but because the carriages are larger than were formerly used, and run upon iron, and are confined to a given track in the street? Then street railroads must not be admitted—they have large carriages which run on iron rails and are confined to a given track. Their momentum is great and may do damage to ordinary vehicles or foot passengers. Indeed, we may suppose or assume that streets occupied by them are not so pleasant for other carriages or so desirable for residences or business stands, as if not thus occupied. But for this reason the property owners along the street cannot expect to stop such improvements. The convenience of those who live at a greater distance from the centre of a city require the use of such improvements, and for their benefit, the owners of property upon the street, must submit to the burthen when the Common Council determine that the public good requires it. Cars upon street railroads are now generally, if not universally, propelled by horses, but who can say how long it will be, before it will be found safe and profitable to propel them with steam, or some other power besides horses? Should we say that this road should be enjoined, we could advance no reason for it which would not apply with equal force to street railroads; so that consistency would require that we should stop all. Nor would the evil which would result from the rule we must lay down stop here. We must prohibit every use of a street, which discommodes those who reside or do business upon it, because their property will else be damaged.

This question has been presented in other States, and in some instances where the public only have an easement in the street, and the owner of the adjoining property still holds the fee of

the street, it has been sustained, but the weight of authority, and certainly in our apprehension all sound reasoning, is the other way.

The bill was properly dismissed and we affirm the decree.

*Decree affirmed.*