From the judgment overruling the demurrer defendant appealed.
It appears from the complaint that plaintiffs are the trustees of the Oxford Presbyterian Church, situated, with the manse for the use of the pastor, on the east side of Gilliam Street, and that the congregation for which they are trustees have been using the property for religious purposes since 1833. The complaint alleges that defendant operates a line of railway to the town of Oxford, and that the terminus of the said line of railroad is within the corporate limits of the said town and very near the center thereof; that the freight depot and passenger station of the said railroad, which are used, operated, and controlled by the defendant, are on the west side of said Gilliam Street and nearly opposite to the said church building and dwelling, and the tracks of the said railroad leading to the said freight depot and passenger station cross said Gilliam Street very near said church and dwelling. Plaintiffs further aver that, in the use and operation of the said railroad, freight depot, passenger station, and tracks thereon, the defendant has wantonly and negligently created, maintained, and permitted on its terminal premises contiguous to the plaintiffs' lot, and on the opposite side of the street therefrom, such nuisances as to greatly endamage the church and manse and to render them less valuable as a place of worship *Page 291 
and residence. The pleader then sets out specifically the particular acts constituting the alleged nuisances:
1. By the ringing of bells, sounding of whistles, blowing off (402) of steam, and the loud puffing of engines, and by smoke, cinders, soot, dust, and foul, noxious, and offensive odors from defendant's engines being operated on its tracks.
2. By odors from cars of fertilizer being moved about and left remaining on the terminal tracks.
3. By the maintenance and use of a freight and passenger depot so near the plaintiffs' property that the smoke, odors, noise, and vibrations from its engines and trains are annoying to the congregation and occupants of the parsonage.
4. By blocking Gilliam Street with trains very near the church and dwelling, and obstructing the passage of the members of the congregation desiring to attend church and the children going to Sunday-school.
5. By loading and unloading circuses on defendant's tracks near the plaintiffs' property.
6. By running trains and shifting cars on Sunday near the plaintiffs' church and at the time of their regular services.
The complaint further alleges that, by reason of the nuisances aforesaid, the said church and dwelling have been greatly and most seriously damaged as a place of worship and for a residence, towit, damaged in the sum of $5,000.
The plaintiffs do not seek to enjoin defendant from the use of its terminal station, but to recover permanent damage, once for all, for the diminution in the value of their property, caused by the propinquity of the terminal and the manner of its use. It is alleged that the defendant acquired its terminal property by purchase, and not by condemnation. It is immaterial, so far as it affects the rights and liability of a railway corporation, how it acquired its property, whether by purchase or under the exercise of the delegated power of eminent domain. It holds the same rights, is subject to the same governmental regulation, and incurs the same liabilities to the public in either case.
The principal legal propositions presented on this appeal were (403) very fully and recently considered by this Court inThomason v. R. R., 142 N.C. 322, and the law of nuisance, as applicable to railroads, is there elaborately discussed by Mr. JusticeConnor.
Applying the principles of law, as there laid down, to the facts as stated in the complaint, we are of opinion his Honor erred in overruling the demurrer.
The several alleged acts charged against the defendant are well within its chartered powers, provided they are performed with reasonable care. *Page 292 
It is out of the question, in this advanced age, to apply to railways, our great arteries of commerce, the doctrines of the common law in relation to nuisances. As an eminent judge has recently said, "A rigid enforcement of rules and definitions announced in an age that knew nothing of locomotives and blast furnaces would have stopped the wheels of commerce, put out the fires of furnaces, and silenced the rattle of manufactories."Simmons, C. J., Austin v. Terminal Co., 108 Ga. 687.
We live in an age of progress, which requires the modification of old rules and their judicious application to changed conditions. Personal interests and comforts must yield to public necessity or convenience. To deny to the defendant the use of its road and terminal would be to exclude all railroads from our cities and towns. The extension of such a ruling would stop all machinery driven by steam, and restrain the use of coal because of its annoying smoke.
There are thousands of manufacturing plants, mills, and other kindred establishments in the cities and towns of this country, about which no complaint has been made in the courts, which would have been adjudged actionable nuisances according to the old view of such structures. We cannot afford to silence the hum of industry or destroy the city that has grown up around the loom. In the elevated railroad cases abutting property owners (404) recovered permanent damages arising from smoke and noise, but upon the sole ground that the elevated structures invaded the owner's easement of light and air and greatly interfered with means of access to his property. Speaking of those cases, the Supreme Court of Georgia says: "But in no case has the owner of property on a cross street or a parallel street, no matter how close to the elevated road, been held entitled to recover, so far as we have found. And yet it is almost certain, on a business proposition, that persons owning property abutting on cross streets have found their property depreciated in value as a result of the construction and operation of the elevated roads." Austin v. Terminal Co., supra. In this complaint there is no allegation of any physical interference with plaintiffs' property by defendant from which damage may flow, as in the elevated cases. It is, therefore, manifest, from an unbroken line of precedents, that the mere establishment and proper use of a freight and passenger station across the street from plaintiffs' property does not constitute an actionable nuisance. Having been established by authority of law, all damage that flows from its reasonable and proper use isdamnum absque injuria. 2 Elliott on Railroads, 718; 2 Wood on Nuisance, sec. 753; R. R. v. Maddox, 116 Ga. 64; 19 A. and E. (1 Ed.), 923 and 924, and cases there collected.
And it further follows that injuries and inconveniences to those who reside near this terminal, from noises of locomotives, shifting of cars, *Page 293 
loading and unloading freight, smoke, and the like, which result from the necessary and therefore proper use and conduct of the terminal, are not actionable nuisances, but are the necessary concomitants of defendant's franchise. Wood Railroads, p. 722; Beseman v. R. R., 50 N.J. Law, 235; R.R. v. Speer, 56 Pa., 325.
While we hold that a railway lawfully operated with reasonable care, however disagreeable it may be to the residents of the neighborhood, is not an actionable nuisance, we are far from holding that (405) it cannot be so operated and conducted as to become one.
The Baptist Church case, 108 U.S. 317, is a weighty and often cited authority illustrative of the lawful and unlawful use of railroad property. The railroad had located an engine-house away from its business terminal, close under the eaves of the church windows, and had erected sixteen smokestacks, lower than the church windows, almost up against them and so constructed that the volume of smoke from each stack poured directly into the body of the church. The Supreme Court of the United States applied the law of nuisance, wholly independent of reasons of public policy and business convenience, for no such considerations required the construction of a roundhouse immediately under the eaves of a church. But in that case the Court holds that, for all usual and necessary noises and inconveniences occasioned by the operation of the railway, as such, in the discharge of its public duty, a property owner cannot recover. When railroads so conduct their operations that they needlessly and heedlessly cause suffering and inconvenience, their statutory authority will not protect them. Such grant of power does not give railway corporations an unbridled license to use their own property as they please without consideration for the rights and property of others. If it did, then, instead of being the servants of the public, they would be its masters. Railroad companies have been held liable for creating an actionable nuisance in using defective engines which scatter great and unnecessary quantities of sparks, cinders and smoke; for continued and unnecessary noises and disturbance from shrieking whistles and hissing steam; for maintaining their stations, depots and cattle yards in a filthy condition; for maintaining coal chutes and roundhouses at improper places and operating them so carelessly and noisily as to create a nuisance. In such and other like contingencies their charters afford them no protection.
Speaking of a railway terminal becoming a nuisance, the (406) Supreme Court of Georgia says: "Although properly constructed, its negligent and improper operation might produce noises, smoke, cinders, etc., largely in excess of what would result from its proper operation, and thus create specific nuisances which the plaintiff might enjoin." R.R. v. Maddox, supra. In their complaint these plaintiffs *Page 294 
have specified as actionable nuisances those general things which the defendant, under its charter, has the right to do, without stating in any particular wherein the defendant has done them injury in an unnecessary, improper, and unlawful manner, thereby exceeding its chartered powers. The defendant may do these lawful acts in an unlawful manner; and if so, it may commit an actionable nuisance; but if it performs them in a proper manner, the act is lawful and not actionable, although disagreeable. The complaint should have pointed out in a specific manner the particulars wherein the defendant has exceeded its legal authority.
"A complaint which alleges negligence in a general way, without setting forth with some reasonable degree of particularity the things done, or omitted to be done, by which the court can see that there has been a breach of duty, is defective and open to demurrer.
"While pleadings are to be liberally construed, they are to be so construed as to give the defendant an opportunity to know the grounds upon which it is charged with liability." Thomason v. R. R., supra.
For instance, the complaint charges as a nuisance the running of trains and shifting of cars on Sunday, at the time of the regular church services. As set out in the complaint, these acts do not, per se, constitute an actionable wrong, for the statute expressly confers upon railway companies the right to operate their passenger, express and mail service on Sundays, as well as freight trains run for the purpose of transporting fruits, vegetables, live stock, and perishable freight. And when (407) there are not sufficient cars of live stock or other perishable freights to make a complete train or section of a train, the company may add cars loaded with other freight to complete it. Revisal, sec. 2613.
The loading and unloading of freight trains on Sunday is expressly prohibited, and consequently the shifting and moving of freight cars on that day would be unnecessary, unless they should be in the way of a passenger train, and this should be anticipated and guarded against as much as possible. The complaint should specify wherein the defendant is violating the statute, and wherein it is creating an unnecessary and unjustifiable noise and disturbance on the Sabbath Day.
In our view of the law the plaintiffs cannot in any event recover permanent damage for the depreciation of their property by reason of the establishment of the railway terminal on Gilliam Street, opposite it. If they can allege and prove unlawful and unwarranted acts and conduct by defendant in the management of its terminal which amount to a nuisance, they may enjoin the further commission of such acts, as well as recover such temporary damage as their property has sustained thereby. As trustees they could not recover for any physical suffering *Page 295 
upon the part of their pastor, his family or the individuals composing the congregation.
As the case is to be remanded, we will direct that plaintiffs have leave to replead and file another complaint, if so advised, and if not advised, the case will be dismissed.
Reversed.
Cited: Staton v. R. R., 147 N.C. 444; s. c., 153 N.C. 434; R. R. v.Goldsboro, 155 N.C. 370; Rhodes v. Durham, 165 N.C. 686.
(408)